## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CYNTHIA MARSH, as Administrator for the Estate of HARRY F. MARSH,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE CONTINENTAL INSURANCE COMPANY, individually and as successor in interest to Marine Office of America Corporation, *a corporation*,**<br><br>**Defendant.** | Case No. 2:21-cv-2185<br><br>Admiralty<br><br>Jury Trial Demanded |

### COMPLAINT FOR WRONGFUL DEATH

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Cynthia Marsh, as Administrator for the Estate of Harry F. Marsh, complaining against Defendant The Continental Insurance Company, individually and as successor in interest to the Marine Office of America Corporation as follows:

1. Plaintiff Cynthia Marsh is the Administrator of the Estate of Harry F. Marsh.

2. Harry F. Marsh resided in San Antonio, Texas. He was born in 1926.

3. On or about November 26, 2018, Harry F. Marsh was diagnosed with mesothelioma and subsequently passed away on August 13, 2019.

4. During the years 1946 through 1986, Harry F. Marsh served aboard various merchant marine vessels during the years, some of which sailed in and out of ports in the State of Louisiana.

5. Harry F. Marsh was diagnosed with, suffered and died from mesothelioma as a result of his exposure to asbestos while aboard vessels owned and operated by Lykes Bros. Steamship Company, which sailed in Louisiana waters and availed themselves of parts in the State of Louisiana.

6. Harry F. Marsh, sailed as a merchant mariner assigned to the engine room as specified in his Vessel Service History (attached hereto as **Exhibit A**).

7. Lykes Bros. Steamship Company filed a Chapter 11 bankruptcy proceeding in 1995 and is no longer in existence.

8.     The Marine Office of America Corporation ("MOAC") provided coverage for Lykes Bros. Steamship Co. vessels in the 1960s and 1970s. MOAC is succeeded by The Continental Insurance Company.

9.     Plaintiff brings this direct action against The Continental Insurance Company. The Continental Insurance Company succeeded MOAC and is responsible for the coverage.

### SUBJECT MATTER JURISDICTION AND GOVERNING LAW

10.     This Court possesses concurrent original jurisdiction over the subject matter of this Petition based upon Article III, Section 2 of the Constitution of the United States, as this case arises under an Act of Congress properly termed the Jones Act, 46 USC § 30104, *et seq*., wherein Harry F. Marsh, at all times relevant, was a merchant mariner who served his employers aboard ships owned and/or operated by the said Lykes Bros Steamship Co., Inc., which vessels utilized and carried asbestos and asbestos-containing products and other hazardous products to which Harry F. Marsh was exposed to the detriment of his health. Harry F. Marsh died as a result of said exposure.

11.     The Jones Act and General Admiralty and Maritime Law, provide the law governing this cause of action to the exclusion of state substantive law relating to personal injury.

12.     The Defendant is a proper defendant as provided for in La. Rev. Stat. Ann. § 22:655.

### PERSONAL JURISDICTION AND VENUE

13.     Harry F. Marsh served aboard various merchant marine vessels during the years 1946 through 1986. Some of said vessels sailed in and out of ports in the State of Louisiana.

14.     Lykes Bros. Steamship Co., Inc. was based in Louisiana and had its principal place of business in Louisiana between 1919 and 1996.

15.     The Continental Insurance Company , individually, and as successor in interest to Marine Office of America Corporation, with its principle place of business located at 151 North Franklin St., Chicago, Il 60606, at times relevant herein conducted business in the State of Louisiana.

### GENERAL ALLEGATIONS

16.     During Harry F. Marsh's sea service career, he worked aboard vessels owned and/or operated by the Lykes Bros. Steamship Co., Inc. which sailed in Louisiana waters and

called on Louisiana ports on numerous occasions while Harry F. Marsh served aboard.  While aboard these vessels in the port and in Louisiana waters, he was repeatedly exposed to asbestos. Such vessels included, but were not limited to, the *S.S. Dolly Turman, Dick Lykes,  Helen Lykes, S.S. Eugene Lykes* and *Mayo Lykes,* owned and/or operated by Lykes Bros. Steamship Co., Inc., Defendants named herein.

17.     Harry F. Marsh made many voyages aboard the *Dolly Turman* vessel.  During these voyages, Mr. Marsh was employed by Lykes Bros. Steamship Company, and he had significant exposure to asbestos while aboard the *Dolly Turman* in Louisiana waters, while at Louisiana ports, which was a substantial factor in bringing about his injury.

18.     Harry F. Marsh made many voyages aboard the *Dick Lykes* in vessel.  During these voyages, Mr. Marsh was employed by Lykes Bros. Steamship Company, and he had significant exposure to asbestos while aboard the *Dick Lykes* in Louisiana waters, while at Louisiana ports, which was a substantial factor in bringing about his injury.

19.     Harry F. Marsh boarded the *S.S. Eugene Lykes* in Houston, Texas on November 20, 1963 and was discharged in New Orleans, Louisiana November 26, 1963.  During this voyage, Mr. Marsh was employed by Lykes Bros. Steamship Company, and he had significant exposure to asbestos while aboard the *S.S. Eugene Lykes* in Louisiana waters, while at Louisiana ports, which was a substantial factor in bringing about his injury.

20.     Harry F. Marsh made many voyages aboard the *Helen Lykes* vessel.  During these voyages, Mr. Marsh was employed by Lykes Bros. Steamship Company, and he had significant exposure to asbestos while aboard the *Helen Lykes* in Louisiana waters, while at Louisiana ports, which was a substantial factor in bringing about his injury.

21.     Harry F. Marsh made many voyages aboard the *Mayo Lykes* vessel.  During these voyages, Mr. Marsh was employed by Lykes Bros. Steamship Company, and he had significant exposure to asbestos while aboard the *Mayo Lykes* in Louisiana waters, while at Louisiana ports, which was a substantial factor in bringing about his injury.

22.     On or about the entirety of his sea service career, Harry F. Marsh was required by his employers to perform duties which included the constant exposure to asbestos friable fibers causing him to breathe into his system carcinogenic asbestos dust resulting in harm to Harry F. Marsh, including mesothelioma.

23.     The asbestos and asbestos-containing products found aboard the vessels upon which Harry F. Marsh sailed are known to be highly toxic to mankind, and the human body can be contaminated by asbestos and asbestos-containing products through inhalation and ingestion.

24.     Lykes Bros. Steamship, Co., Inc., knew or should have known, of the dangers associated with exposure to asbestos and asbestos-containing products in the workplace.

25.     Harry F. Marsh was exposed to dangerous and unlawful concentrations of asbestos in the ambient air, in potable water and food furnished by his employer due to his assigned work and/or in close proximity of said asbestos and asbestos-containing products.

26.     Lykes Bros. Steamship, Co., Inc., knew with substantial certainty that harmful contact with Harry F. Marsh person would result from his exposure to asbestos present aboard the vessels upon which he served through the products that were produced and/or supplied to or brought aboard the vessels upon which Harry F. Marsh worked.

27.     Lykes Bros. Steamship, Co., Inc., breached its duty to Harry F. Marsh in the following particulars, including but not limited to:

(a)     Failed to adequately warn Harry F. Marsh of the dangerous characteristics of asbestos and asbestos-containing products;

(b)     Failed to provide Harry F. Marsh with the information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, to protect Harry F. Marsh from being harmed and disabled by exposure to asbestos and asbestos-containing materials;

(c)     Failed to place adequate warnings on said asbestos and asbestos-containing materials, to warn of the health hazards associated with coming in contact with said products.

(d)     Failed to exercise reasonable care to publish, adopt and enforce safety plans and/or a safe method of handling and installing asbestos and asbestos-containing materials;

(e)     Failed to adopt and utilize a substitute material to eliminate asbestos fibers in the products produced and/or utilized aboard the aforestated vessels;

(f)     Failed to test asbestos and asbestos-containing material to determine their disease causing propensities prior to distributing and/or utilizing releasing these products, and if in fact any Defendant tested these products, then said Defendants were negligent in concealing the results from the public;

(g)     Failed to warn of the scientifically recognized synergism between exposure to asbestos in conjunction with smoking and other agents;

(h)     Failed to act in a reasonable and prudent manner.

28.     As a direct and proximate result of Lykes Bros. Steamship Co., Inc. aforementioned tortious acts, Harry F. Marsh sustained serious, incurable and progressive asbestos-related disease.  Harry F. Marsh contracted an asbestos-related disease, and suffered other bodily injuries including: great pain of mind and body, shock, disgrace, outrage, humiliation, indignity, disability, loss of the joys, pleasures and vitalities of life, and exacerbation of existing disease, and ultimately lost his life in succumbing to this illness.

29.     Harry F. Marsh developed mesothelioma and as a result and was extremely fearful of the ravages of such illnesses from which he suffered.

30.     Harry F. Marsh experienced severe mental anguish, great pain and suffered the ravages of mesothelioma.

31.     As a result of Harry F. Marsh asbestos-related condition, he suffered great pain of mind and body.

32.     Harry F. Marsh died on August 13, 2019 as a result of his exposure to asbestos while serving aboard the Lykes vessels.

33.     Harry F. Marsh has incurred medical bills and other expenses.

34.     Harry F. Marsh sustained wage losses in an indeterminate amount, which amount will be demonstrated at trial.

35.     By the wrongful actions, neglect and/or default, Defendants caused Harry F. Marsh's wrongful death and further all causes of action filed on behalf of Harry F. Marsh prior to his death survive.

### CAUSES OF ACTION AGAINST THE SHIPOWNER DEFENDANTS

### COUNT I

### JONES ACT CLAIM

NOW COMES Plaintiff and hereby re-alleges and incorporates by reference all of the previous allegations set forth above and further states as against Defendant, that:

36.     As a direct approximate result of the negligence under the Jones Act, 46 USCS. § 30104, Harry F. Marsh suffered from mesothelioma, along with the sequella thereof.

37.     Lykes Bros. Steamship Co., Inc., was negligent in their failure:

(a)  To provide adequate warning to the crew, including Harry F. Marsh, of the hazards of asbestos utilized and/or carried shipboard;

(b)  Failed to provide Harry F. Marsh with the information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, to protect Harry F. Marsh from being harmed and disabled by exposure to asbestos and asbestos-containing materials;

(c)  Failed to place adequate warnings on, near or with said asbestos and asbestos-containing materials, to warn of the health hazards associated with coming in contact with said products.

(d)  Failed to exercise reasonable care to publish, adopt and enforce safety plans and/or a safe method of handling and installing asbestos and asbestos-containing materials;

(e)  Failed to adopt and utilize a substitute material to eliminate asbestos fibers in the products produced and/or utilized aboard the aforestated vessels;

(f)  Failed to test asbestos and asbestos-containing material to determine their disease causing propensities prior to distributing and/or utilizing and/or releasing these products, and if in fact Lykes Bros. Steamship Co., Inc. tested these products, they were negligent in concealing the results from the public;

(g)  Failed to provide a reasonably safe workplace; and

(h)  Failed to act in a reasonable and prudent manner.

38.  As a direct and proximate result of the acts and omissions aforestated by Lykes Bros. Steamship Co., Inc., Harry F. Marsh sustained injuries as contemplated in *American Fire & Casualty Company v. Flynn*, 341 U.S. 6, 71 S. Ct. 534 (1951). Harry F. Marsh seeks damages as below stated, *inter alia*:

(a)  Loss of earnings and earnings capacity;

(b)  Conscious pain and suffering, past and future;

(c)  Mental anguish, fright and shock, embarrassment, humiliation or mortification, past or future;

(d)  Medical expenses and costs;

(e)  Household services;

(f)  Loss of pleasure, including social and recreational amenities, past and future;

(g)  Loss of society and companionship;

(h)  Death by wrongful acts;

(i)     Loss of support, costs of estate planning, and funeral expenses; and

(j)     Any and all other elements of damages cognizable in law or which may be raised, pleaded and proved by the Plaintiffs during the pendency of this cause and at the time of trial.

WHEREFORE, Harry F. Marsh demands judgment against Defendant, in an amount reasonable in the premises, and Harry F. Marsh further seeks interest and costs to be taxed in accordance with law and such other and further measures of relief as the Court may determine to be appropriate and just in the premises.

## <u>JURY TRIAL DEMAND</u>

Plaintiff hereby demands a trial by a jury.

Dated:  November 25, 2021

Respectfully submitted,
**MOTLEY RICE LLP**

/s/ Meredith K. Clark
Meredith K. Clark, Esq.
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Phone:  (843) 216-9000
Fax:  (843) 216-9450
mkclark@motleyrice.com

**ATTORNEYS FOR PLAINTIFF CYNTHIA MARSH, ADMINISTRATOR FOR THE ESTATE OF HARRY F. MARSH**